IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 2 8 2020

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| HAROLD DEWAYNE FERGUSON, | § |
| | § |
| Petitioner, | § |
| | § |
| v. | §    No. 4:19-CV-009-A |
| | § |
| LORIE DAVIS, Director, | § |
| Texas Department of | § |
| Criminal Justice, | § |
| Correctional Institutions | § |
| Division, | § |
| | § |
| Respondent. | § |

### MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 filed by petitioner, Harold Dewayne Ferguson, a

state prisoner confined in the Correctional institutions Division

of the Texas Department of Criminal Justice, against Lorie Davis,

director of that division, respondent. After having considered

the pleadings, state-court records, and relief sought by

petitioner, the court has concluded that the petition should be

denied.

### I. BACKGROUND

The state appellate court summarized the procedural

background of the case as follows:

> In separate causes, [petitioner] was charged [in
> Parker County, Texas, Case Nos. CR16-0101 and CR16-
> 0102,] with evading arrest or detention by vehicle and
> with possession of a controlled substance. Both charges
> contained paragraphs alleging [petitioner] was a
> habitual felony offender, enhancing the punishment

range for each offense to imprisonment for life, or for any term of not more than ninety-nine years or less than twenty-five years. The trial court called both causes to trial, and before jury selection began, [petitioner] pleaded guilty to the evading-arrest charge and true to the ten prior convictions alleged in three separate enhancement paragraphs contained in the indictment. Thereafter, the punishment phase on the evading-arrest charge proceeded before a jury, which assessed [petitioner]'s punishment for that offense at life imprisonment. Pursuant to a pretrial agreement, [petitioner] then pleaded guilty to the possession charge and true to the same enhancements as in the evading-arrest case, and the trial court assessed his punishment for that offense at life imprisonment.

(Mem. Op. 1-2, doc. 13-3 (citations omitted).)

The appellate court affirmed the trial court's judgments of conviction and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (Docket Sheets 2, docs. 13-2 & 13-7.) Petitioner also filed two state habeas-corpus applications challenging his convictions and sentences, which were denied by the Texas Court of Criminal Appeals without written order. (SHR03[1] 18-34, doc. 13-29; SHR04 18-34, doc. 13-31; Action Taken, docs. 13-28 & 13-30.)

## II.  ISSUES

Petitioner's grounds for relief are multifarious, oftentimes confusing, and addressed as throughly as practical and only to the extent they were exhausted in the state courts. They are generally construed as follows:

---

[1]"SHR03" and "SHR04" refer to the records of petitioner's state habeas proceedings in WR-30,902-03 and WR-30,902-04, respectively.

(1)   the trial court erred by failing to hold a hearing
      on his motion for new trial;

(2)   the trial court erred by admitting cumulative
      evidence of his prior convictions;

(3)   he received ineffective assistance of trial
      counsel; and

(4)   his plea was involuntary.

(Pet. 6-7, doc. 1.)

### III.   RULE 5 STATEMENT

Respondent believes petitioner has exhausted his state-court remedies and that the petition is not barred by limitations or subject to the successive-petition bar. (Resp't's Answer 5, doc. 14.)

### IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state

proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. § 2254(e)(1). *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S. 362, 399 (2000).

Furthermore, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* 138 S. Ct. 1188, 1191-92 (2018). If there is no related state-

court decision providing the court's reasoning, a federal court assumes that the state court applied the proper clearly established federal law to the facts of the case and then determines whether its decision was contrary to or objectively unreasonable application of that law. *See* 28 U.S.C.A. § 2254(d)(1); *Virgil v. Dretke,* 446 F.3d 598, 604 (5th Cir. 2006).

## V. DISCUSSION

### 1. Trial Court Error

Under his first ground, petitioner claims that the state appellate court erred by overruling his claim that the trial court erred in failing to hold a hearing on his motion for new trial, which was overruled by operation of law. (Pet. 6, doc. 1) In the last reasoned state-court decision on the issue, the state appellate court, relying solely on state law, addressed the claim as follows:

> [Petitioner] argues the trial court's failure to hold a hearing on his motion for new trial was reversible error. As his sole ground for relief in his motion for new trial, [petitioner] alleged that his trial attorney "did not call character witnesses on [his] behalf at the punishment trial in this case." [Petitioner] supported this allegation with his affidavit, in which he averred,
>
>> Prior to trial, I gave my [trial counsel] the list of names I wanted as character witnesses for my trial. At trial, my attorney did not call any of my character witnesses to testify on my behalf. At the close of trial, the jury assessed a life sentence in each case. Two of those witnesses, my brother and sister, were present in the courthouse during my trial but were not called as witnesses.

5

We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion. A trial court abuses its discretion by denying a hearing on a motion for new trial if the motion and accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief.

[Petitioner] bases his complaint on the following exchange during trial, which occurred outside the jury's presence and after he had taken the stand to testify on his own behalf:

> [DEFENSE COUNSEL]: [Petitioner], we've come to the point in the trial that we can rest or we can put on more evidence. . . . We've come to the conclusion that -- and I want to ask you, is there anything else you want presented?
>
> [Petitioner]: No, sir.
>
> [DEFENSE COUNSEL]: You're going to have to speak up so they can hear you.
>
> [Petitioner]: No, sir.
>
> [DEFENSE COUNSEL]: Is there anything else that you want [co-counsel] and I to do?
>
> [Petitioner]: No, sir.
>
> [DEFENSE COUNSEL]: Are you satisfied with our handling of your case?
>
> [Petitioner]: Yes, sir, I am.
>
> [DEFENSE COUNSEL]: Okay. And are you telling me to go ahead and rest this case at this point?
>
> [Petitioner]: Yes, sir.
>
> [DEFENSE COUNSEL]: And the next step would be to close. That means that we have nothing left. We tell the Judge we rest our case. He's going to ask the prosecution if

they have anything additional. It's my
understanding they're going to close, and
then they're going to ask us if we close. Are
you ready to close our case?

[Petitioner]: Yes, sir, I guess so.

[DEFENSE COUNSEL]: Well, yes, sir, I
guess so is not an answer. Are you ready to
close our case?

[Petitioner]: Yes.

[DEFENSE COUNSEL]: Okay. That's all
I've got, Judge.

[Petitioner] contends that while this exchange
arguably shows that his lawyer did not call any
additional witnesses because [petitioner] simply did
not want to call any more witnesses, it also possibly
demonstrates that [petitioner] misunderstood what his
counsel was asking him, and thus was under the
impression that only his testimony was coming to a
close, not that he was foregoing the opportunity to
present other witnesses. He also contends that at a
minimum, his affidavit "is some evidence that [he] did
not understand the concept of resting and closing and
that he wanted his other witnesses to testify." Thus,
[petitioner] argues, a hearing on his motion for new
trial would have allowed the trial court the
opportunity to determine whether he intended to waive
his right to present additional witnesses.

We note that in addition to the exchange set forth
above, the record contains another exchange in which
[petitioner]'s counsel asked [petitioner] whether he
wanted to present other witnesses in addition to his
own testimony. After the State rested its case, and
before [petitioner] testified on his own behalf,
[petitioner]'s counsel questioned [petitioner] under
oath and outside the presence of the jury regarding
whether he wanted to rest his case without presenting
any evidence or whether he wanted to present evidence:

[DEFENSE COUNSEL]: Thank you.
[Petitioner], we are now to the point where
the State of Texas has rested their case.

7

Now there are two things that can
happen. We can rest our case and not put on
any evidence, or it's my understanding now
and from last night and from other times that
we've met with you, that you want to take the
witness stand.

[Petitioner]: Yes, sir.

[Petitioner]'s counsel then discussed that
decision with [petitioner], who insisted upon taking
the stand despite his counsel's recommendation that he
not do so. Then [petitioner]'s counsel continued:

[DEFENSE COUNSEL]: Is there -- other
than your testimony, is there any other thing
that you want us to do?

[Petitioner]: Not that I'm aware of.

[DEFENSE COUNSEL]: Not that you're
aware of. Can you think of anything else that
you want us to do at this point?

[Petitioner]: No, sir.

[DEFENSE COUNSEL]: Is there -- are you
satisfied with mine and [co-counsel's]
representation up to this point, of course?

[Petitioner]: Yes, sir.

[DEFENSE COUNSEL]: And I'll be asking
you that same question after you testify.

[Petitioner]: Yes, sir.

[DEFENSE COUNSEL]: So it's your
decision to testify in this case?

[Petitioner]: Yes, sir.

[DEFENSE COUNSEL]: Knowing that --
knowing that it can have consequences and
knowing that you don't have to?

[Petitioner]: Yes, sir.

> In his motion for new trial, the sole matter
> [petitioner] alleged was not determinable from the
> record was that his trial attorney "did not call
> character witnesses on [his] behalf at the punishment
> trial in this case." But the record shows in two
> separate places why his trial attorney did not call
> additional witnesses: [petitioner] stated he did not
> want him to. We conclude, therefore, that [petitioner]
> has failed to show that his motion for new trial and
> accompanying affidavit raised a matter that was not
> determinable from the record. Accordingly, the trial
> court did not abuse its discretion by declining to hold
> a hearing on that motion.

(Mem. Op 2-7, doc. 13-3 (footnote omitted) (citations omitted).)

Under Texas law, a defendant does not have an absolute right to a hearing on a motion for a new trial absent a showing that the motion raises matters that are not determinable from the record and establishes reasonable grounds upon which the defendant could be entitled to a new trial. *Hobbs v. State,* 298 S.W.3d 193, 199-200 (Tex. Crim. App. 2009) Clearly, this claim involves the interpretation and application of state law by the state court, which cannot be challenged on federal habeas review. *See Arnold v. Cockrell,* 306 F.3d 277, 279 (5th Cir. 2002); *Haygood v. Quarterman,* 239 F. App'x 39, 42 (5th Cir. 2007) (citing *Dickerson v. Guste,* 932 F.2d 1142, 1145 (5th Cir. 1991)). A federal court does not sit to correct errors made by state courts in interpreting and applying state law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). To the extent petitioner now asserts, for the first time, a violation of his federal constitutional rights, no such argument was exhausted in the

9

state courts is procedurally barred. (Pet'r's Mem. 25-30,[2] doc. 1.) *See* 28 U.S.C. § 2254(b)(1); *Elizalde v. Dretke,* 362 F.3d 323, 328 (5th Cir. 2004) (providing claim not raised in federal habeas petitioner's initial state-habeas application that would now be procedurally barred from consideration by the state court is procedurally barred in federal court for failure to exhaust). Petitioner is not entitled to relief under his first ground.

Under his second ground, petitioner claims that the state appellate court erred by overruling his claim that the trial court erred by admitting cumulative evidence of his prior convictions. (Pet. 6, doc. 1.) In the last reasoned state-court decision on the issue, the state appellate court, relying solely upon state law, addressed the claim as follows:

> During its case-in-chief, the State offered exhibits one through sixteen, which were pen packets and judgments detailing [petitioner]'s prior criminal record. [Petitioner] lodged a Rule 403 objection that the admission of those exhibits was cumulative because he had already pleaded true to all the prior convictions alleged in the indictment. The trial court overruled that objection and admitted the exhibits. Later, when cross-examining [petitioner], the State offered exhibit twenty-six, which was a printed-out PowerPoint presentation that summarized [petitioner]'s criminal history as reflected in the sixteen exhibits mentioned above. [Petitioner] also raised a Rule 403 objection to exhibit twenty-six, arguing it, too, was cumulative. The trial court overruled that objection and admitted the exhibit. On appeal, [petitioner] argues the trial court abused its discretion by admitting exhibit twenty-six because it was needlessly cumulative.

---

[2]Petitioner's memorandum in support is attached to his form petition; thus, the pagination in the ECF header is used.

## A. STANDARD OF REVIEW

A trial court is afforded wide discretion in deciding whether to admit evidence, and we may not disturb such an evidentiary ruling absent an abuse of discretion. Under this standard, we will uphold a trial court's evidentiary ruling as long as it falls within the zone of reasonable disagreement and was correct under any theory of law applicable to the case.

## B. LAW

At the punishment phase of trial, the admissibility of evidence regarding a defendant's prior criminal record is governed by article 37.07 of the code of criminal procedure, which in pertinent part provides,

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant.

However, a trial court may exclude evidence that is admissible under article 37.07 if, as relevant here, the probative value of the evidence is substantially outweighed by the danger of needless presentation of cumulative evidence.

## C. APPLICATION

For purposes of our analysis, we assume, without deciding, that the trial court should have excluded exhibit twenty-six under Rule 403 as needlessly cumulative and that, therefore, its admission of that exhibit was an abuse of discretion.

The admission of evidence that should have been excluded under Rule 403 is generally non-constitutional error. We disregard any non-constitutional error, defect, irregularity, or variance that does not affect an appellant's substantial rights. We will not overturn a case for a non-constitutional error if, after examining the record as a whole, we have a fair assurance that it

11

did not influence the jury, or influenced them only slightly. In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record.

With respect to [petitioner]'s prior criminal history, the record reflects that he pleaded true to all of the enhancement paragraphs contained in the indictment. This fact came before the prospective jurors during both the State's and [petitioner]'s questioning during voir dire. After a jury was selected, all of the enhancement paragraphs in the indictment were read to the jury, and the trial court informed the jury that [petitioner] had pleaded true to all of the allegations. During the State's case-in-chief, it offered, and the trial court admitted, exhibits one through sixteen, which as noted above, were pen packets and judgments detailing [petitioner]'s prior criminal record. The State then published each of those exhibits to the jury and simply summarized what each exhibit was.

When [petitioner] took the stand in his own behalf, his extensive criminal record came before the jury during his direct examination as well. [Petitioner] testified that his first experience with the criminal justice system occurred when he got caught with methamphetamines. His attorney referenced the fact that all of his prior convictions would be in the jury charge for the jury to see. [Petitioner] testified that he had been in prison for half of his life because of his prior criminal conduct, and he stated he had always taken responsibility for his conduct by pleading guilty to his prior criminal charges. [Petitioner] acknowledged again that he had pleaded guilty to all of the enhancements in the indictment. [Petitioner]'s attorney then walked him through those felony enhancements, and [petitioner] testified extensively regarding the details of those offenses.

On cross-examination, the State also broached the subject of [petitioner]'s prior criminal history. The prosecutor questioned [petitioner] about his prior convictions, and [petitioner] again testified in detail concerning the facts leading to those convictions without any objection. The prosecutor then tendered exhibit twenty-six to [petitioner] and asked

him if it fairly and accurately summarized his testimony concerning his prior criminal convictions, and [petitioner] responded that it did. It was at that point that the prosecutor moved to admit exhibit twenty-six. Then, after the parties rested, the charge was read to the jury. The charge included instructions detailing [petitioner]'s prior felony convictions as set forth in the indictment and informing the jury that [petitioner] had pleaded true to all of them.

The above reflects that [petitioner]'s criminal record was presented to the jury from the beginning of trial to the end. [Petitioner] himself testified extensively both on direct examination and cross-examination concerning the details of his prior criminal conduct. And he does not contend that exhibit twenty-six inaccurately or unfairly summarized his criminal history; to the contrary, as noted above, he agreed at trial that exhibit twenty-six fairly and accurately summarized his testimony concerning his prior criminal convictions.

We conclude that, assuming the trial court abused its discretion by admitting exhibit twenty-six, given all of the other evidence that was presented to the jury on the issue of [petitioner]'s prior criminal history, the record as a whole demonstrates that any such error did not have a substantial or injurious effect on the jury's decision to assess his punishment at life imprisonment and did not affect his substantial rights and was, therefore, harmless.

(Mem. Op. 7-12, doc. 13-3 (footnote omitted) (citations omitted).)

"A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 2009). The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a

reasonable probability that the verdict might have been different had the trial been properly conducted. To the extent petitioner now asserts, for the first time, a violation of his federal constitutional rights, no such argument was exhausted in the state courts is procedurally barred. (Pet'r's Traverse 4, doc. 17.) *See* 28 U.S.C. § 2254(b)(1); *Elizalde,* 362 F.3d at 328. Nor has he demonstrated that the trial court's ruling rendered his trial fundamentally unfair, in light of the ample evidence establishing his lengthy criminal record, including his own admissions. The list was merely cumulative of that evidence, which was clearly relevant and admissible under state law. Petitioner is not entitled to relief under his second ground.

## B. Ineffective Assistance of Counsel

Under his third ground, petitioner claims that the state habeas courts' denial of his ineffective-assistance claims without a hearing or written order was contrary to *Strickland* and deprived him of a full and fair hearing. (Pet. 7 & Pet'r's Mem. 41, doc. 1.) Under his fourth ground, without detail or further legal development, petitioner claims that his guilty pleas were rendered involuntary as a result of counsel's failure to protect his rights to appeal, to convey the full range of punishment to him, and to admonish him in terms that he could understand. (Pet. 7, doc. 1.)

A criminal defendant has a constitutional right to the

14

effective assistance of counsel at trial. U.S. CONST. amend. VI,
XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To
successfully state a claim of ineffective assistance of counsel,
the petitioner must demonstrate that counsel's performance was
deficient and that the deficient performance prejudiced his
defense. *Strickland,* 466 U.S. at 687. Failure to establish
either prong of the *Strickland* test will result in a finding
that counsel's performance was constitutionally effective. *Id.*
The petitioner bears the burden of proof on both components of
the *Strickland* standard. *Id.* at 687. In applying this test, a
court must indulge a strong presumption that counsel's conduct
fell within the wide range of reasonable professional
assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's
performance must be highly deferential and every effort must be
made to eliminate the distorting effects of hindsight. *Id.* at
689.

However, notwithstanding petitioner's claims, by entering a
knowing, intelligent, and voluntary guilty plea, a defendant
waives all nonjurisdictional defects in the proceedings
preceding the plea, including all claims of ineffective
assistance of counsel that do not attack the knowing and
voluntary character of the plea. *Smith v. Estelle,* 711 F.2d 677,
682 (5th Cir. 1983); *Bradbury v. Wainwright,* 658 F.2d 1083, 1087
(5th Cir. 1981). A guilty plea is knowing, intelligent, and

voluntary if done with sufficient awareness of the relevant
circumstances and likely consequences surrounding the plea.
*Brady v. United States,* 397 U.S. 742, 748 (1970). The official
state-court records "are entitled to a presumption of regularity
and are accorded great evidentiary weight" on federal habeas
review. *Hobbs v. Blackburn,* 752 F.2d 1079, 1081-82 (5th Cir.
1985) (citations omitted). Likewise, "[s]olemn declarations in
open court carry a strong presumption of verity." *Blackledge v.
Allison*, 431 U.S. 63, 73-74 (1977) When reviewing a record, a
court must give a signed, unambiguous plea agreement great
evidentiary weight. *United States v. Abreo*, 30 F.3d 29, 32 (5th
Cir. 1994). Although a defendant's attestation of voluntariness
at the time of the plea is not an absolute bar to later contrary
contentions, it places a heavy burden upon him. *United States v.
Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979). If a challenged
guilty plea is knowing, intelligent, and voluntary, it will be
upheld on federal habeas review. *James v. Cain,* 56 F.3d 662, 666
(5th Cir. 1995). Because petitioner's guilty pleas may have
waived one or more of his claims under these grounds, it is
necessary to address the knowing, intelligent, and voluntary
nature of his pleas first.

No evidentiary hearing was held and no express findings of
fact or legal conclusions were made by the state courts
regarding petitioner's claims. The state habeas judge, who also

presided over the plea proceedings, merely recommended denial of petitioner's state application after finding that there were "no controverted, previously unresolved facts material to the legality of" petitioner's confinement. (SHR03 75, doc . 13-29; SHR04 75, doc. 13-31.) The recommendation was followed by the Texas Court of Criminal Appeals, which denied relief without written order.

As previously noted, in the absence of express findings of fact or a written opinion, this court assumes the state courts made factual findings consistent with the state courts' determination of the claim. Thus, it may be assumed that the state courts determined that petitioner's guilty pleas were knowing, intelligent, and voluntary. This conclusion is further reinforced by petitioner's execution of the plea documents acknowledging that he was aware of the consequences of his pleas and that his pleas were knowingly, intelligently, and voluntarily entered. (SHR03 13-17, doc. 13-29; SHR04 13-17, doc. 13-31.) Further, based on the trial court's and counsel's interaction with petitioner, both the judge and counsel were under the opinion that petitioner understood all the circumstances concerning his pleas, wanted to proceed with his pleas, in each instance, and did so intentionally, knowingly, and voluntarily. Petitioner's conclusory assertions after the fact—that counsel failed to protect his rights to appeal, convey

the full range of punishment to him, and explain the admonishments in terms he could understand—unsupported by any credible evidence in the record, in and of themselves, are insufficient to rebut the presumption that counsel provided reasonably effective assistance, the presumption that his pleas were knowing and voluntary, and the presumption of regularity of the state-court records. *See Strickland,* 466 U.S. at 689 (providing counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"); *Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974) (providing state-court records "are entitled to a presumption of regularity"); *Mitschke v. State,* 129 S.W.3d 130, 136 (Tex. Crim. App. 2004) (providing "defendant who pleads guilty after having been properly admonished of his constitutional rights, who has knowingly and voluntarily waived those rights, and who has been admonished as required by our constitutions and art. 26.13 [of the Texas Code of Criminal Procedure] is presumed to have entered a voluntary and knowing plea"). Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value. *See Ross v. Estelle,* 694 F.2d 1008, 1011-12 (5th Cir.1983). Petitioner is not entitled to relief under his fourth ground.

18

Under his third ground, petitioner claims that counsel was ineffective by failing to (1) present mitigating evidence or testimony during the punishment phase, (2) consult and obtain expert witnesses, notwithstanding petitioner's inability to pay, and (3) convey his plea counter-offers to the state as he instructed. (Pet. 7 & Pet'r's Mem. 38-43, doc. 1.) Because petitioner's guilty pleas were knowing, voluntary, and intelligent, his second claim involving counsel's alleged omission preceding the pleas, and not the voluntariness of the pleas, is waived.

As to the remainder of his claims, the court defers to the state courts' implied findings that counsel provided reasonably effective assistance. Having done so, the state courts' determination of the claims is neither contrary to, or an unreasonable application of, *Strickland* based on the evidence available to the state courts.

Petitioner claims that counsel refused to convey any of his counter-offers to the state's 45-year plea offer as he instructed. (Pet. 7, doc. 1.) However, there is absolutely nothing in the record to suggest that counsel refused to convey any such counter-offers, that the state would have accepted any such counter-offers, and that petitioner would have been steadfast in his desire to plead guilty. Bald assertions are not enough to sustain a claim of ineffective assistance of counsel.

*Sayre v. Anderson,* 238 F.3d 631, 635-36 (5th Cir. 2001).

Petitioner also claims that counsel was aware of, but failed to present, evidence of his lengthy drug addiction and "impaired mentality" in mitigation or call two of his family members who were present at punishment and wanted to offer "mitigating testimony." (SHR03 23, doc. 13-29.) However, petitioner testified regarding his limited education and his struggle with drugs from the age of 19 and twice indicated that he did not want counsel to do anything else in his defense. (Reporter's R., vol. 4, 39, 44, 46-52, 76, 78, doc. 13-16.) Furthermore, petitioner presented no affidavits or other form of factual support that his family members were willing to testify and what their testimony would have been. Failure to produce affidavits or similar evidentiary support from uncalled witnesses is fatal to the claim. *See Sayre,* 238 F.3d at 636.

Finally, petitioner claims that he was denied a full and fair hearing on his claims under these grounds because the state courts denied relief without a live hearing or written order. A full and fair hearing on factual issues underlying a habeas petitioner's claims does not necessarily require live testimony. *See Murphy v. Johnson,* 205 F.3d 809, 816 (5th Cir. 2000); *Clark v. Johnson,* 202 F.3d 760, 766 (5th Cir. 2000). Furthermore, contrary to petitioner assertion, a denial, even though it does not contain a written opinion, is not silent. *See Ex parte*

*Torres,* 942 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits). It is a decision on the merits and is entitled to deference under § 2254(d). *See also Neal v. Puckett,* 239 F.3d 683, 686 (5th Cir. 2001) (providing in the context of federal habeas proceedings, "adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive"). Additionally, the Supreme Court recently reconfirmed that § 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter,* 562 U.S. 86, 98 (2011). Petitioner is not entitled to relief under his third ground.

### C. Evidentiary Hearing

Petitioner also seeks an evidentiary hearing in this court. However, the Supreme Court has made clear that § 2254(e)(2)—the statutory mechanism through which Congress limited a habeas petitioner's ability to obtain a federal evidentiary hearing (and to expand the federal habeas record)—has no application when a federal court reviews claims previously adjudicated on their merits in state court. *See Cullen v. Pinholster,* 563 U.S. 170, 184-85 (2001) (showing the Supreme Court explicitly rejected the proposition that § 2254(d)(1) has no application when a federal court admits new evidence under § 2254(e)(2)); *see also id.* at 203 n.20 (providing "[b]ecause [petitioner] has

failed to demonstrate that the adjudication of his claim based on the state-court record . . . [violated § 2254(d)(1)] our analysis is at an end. We are barred from considering the evidence [petitioner] submitted in the District Court that he contends additionally supports his claim."). If a claim has been adjudicated on the merits by a state court, a federal petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court on the merits. Here, petitioner's claims were addressed by the state courts on the merits and he fails to demonstrate that the state courts' determination of the claims violates § 2254(d)(1). Accordingly, a federal hearing is inappropriate on his claims. Petitioner is not entitled to relief under his third ground.

## VI. CONCLUSION

In conclusion, the state courts' adjudication of the claims presented does not appear contrary to, or involve an unreasonable application of, federal law as determinated by the Supreme Court or based on an unreasonable determination of the facts in light of the record as a whole.

For the reasons discussed herein,

The court ORDERS that the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied and that a certificate of appealability be, and is hereby

denied.

     SIGNED March __2 8__, 2020.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE